Slip Op. 20-89

UNITED STATES COURT OF INTERNATIONAL TRADE

CSC SUGAR LLC,

                Plaintiff,

     v.

UNITED STATES,

                Defendant.

Before: Leo M. Gordon, Judge

Court No. 20-00017

**OPINION**

[Denying Plaintiff's motion for judgment on the agency record.]

Dated: June 25, 2020

    <u>Jeffrey S. Neeley</u>, <u>Nithya Nagarajan</u>, <u>Michael Klebanov</u>, and <u>Joseph S. Diedrich</u> Husch Blackwell, LLP, of Washington, DC for Plaintiff CSC Sugar LLC.

    <u>Douglas G. Edelschick</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC for Defendant United States. With him on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Reginald T. Blades, Jr.</u>, Assistant Director. Of counsel on the briefs was <u>Paul K. Keith</u>, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

    <u>Robert C. Cassidy, Jr.</u>, <u>Charles S. Levy</u>, <u>James R. Cannon, Jr.</u>, and <u>Jonathan M. Zielinsky</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC for Defendant-Intervenors the American Sugar Coalition, American Sugar Cane League, American Sugarbeet Growers Association, American Sugar Refining, Inc., Florida Sugar Cane League, Rio Grande Valley Sugar Growers, Inc., Sugar Cane Growers Cooperative of Florida, and the United States Beet Sugar Association.

    <u>Rosa S. Jeong</u>, <u>Irwin P. Altschuler</u>, and <u>Sonali Dohale</u>, Greenberg Traurig, LLP, of Washington, DC for Defendant-Intervenor Cámara Nacional de Las Industrias Azucarera y Alcoholera.

    <u>Stephan E. Becker</u> and <u>Sahar J. Hafeez</u>, Pillsbury Winthrop Shaw Pittman, LLP, of Washington, DC for Defendant-Intervenor Government of Mexico.

Gordon, Judge: Before the court is the USCIT Rule 56.2 motion of Plaintiff CSC Sugar LLC ("Plaintiff" or "CSC Sugar") for judgment on the administrative record challenging the U.S. Department of Commerce's ("Commerce") final determination in Sugar from Mexico, 85 Fed. Reg. 3,613 (Jan. 22, 2020) (Amendment to Agreement Suspending the Countervailing Duty Investigation) ("2020 CVD Amendment").[1] See Pl.'s Mot. for J. on the Agency R. under CIT Rule 56.2, ECF No. 36 ("Pl.'s Br."); see also Def.'s Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 39 ("Def.'s Resp."); Def.-Intervenor Gov't of Mexico's Resp. in Opp'n to Pl.'s 's Mot. for J. on the Agency R., ECF No. 40 ("Mexico Resp."); Resp. of Def.-Intervenor Cámara Nacional de Las Industrias Azucarera y Alcoholera in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 41, ("Cámara Resp."); Def.-Intervenor Am. Sugar Coalition's Resp. to Pl.'s 's Mot. for J. on the Agency R., ECF No. 43 ("ASC Resp."); Reply Memorandum in Support of Pl.'s Mot. for J. on the Agency R., ECF No. 45 ("Pl.'s Reply").[2] The court has jurisdiction over this matter pursuant to Section 516A(a)(2)(B)(iv) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iv) (2012),[3] and 28 U.S.C. § 1581(c) (2012). For the reasons set forth below, the court denies Plaintiff's motion, and sustains the 2020 CVD Amendment.

---

[1] CSC Sugar also filed a parallel action, Court No. 20-00016, challenging Commerce's amendment to the Antidumping Duty ("AD") Suspension Agreement ("2020 AD Amendment"), which is addressed in this Court's decision, Slip Op. 20-88, also issued this date.

[2] All citations to parties' briefs and the agency record are to their confidential versions unless otherwise noted.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I.  Background

In 2014, pursuant to a petition filed by the American Sugar Coalition, and its members (collectively, "ASC"), Commerce and the U.S. International Trade Commission conducted an investigation as to whether imports of sugar from Mexico were being subsidized, and whether such imports were injurious to the U.S. industry. After Commerce issued a preliminary determination that countervailable subsidies were being supplied, Commerce, on behalf of the United States Government, and the Government of Mexico ("Mexico") negotiated and signed a suspension agreement. See Sugar From Mexico, 79 Fed. Reg. 78,044 (Dep't of Commerce Dec. 29, 2014) (suspension of CVD investigation) ("CVD Agreement").

In 2017, Commerce and Mexico negotiated amendments to the CVD Agreement. See Sugar from Mexico, 82 Fed. Reg. 31,942 (Dep't of Commerce July 11, 2017) (amendment to CVD Suspension Agreement) ("2017 CVD Amendment"). Among other changes, this amendment altered the definition of "refined sugar." See id. (amending definition of "refined sugar" to consist of sugar with polarity of 99.2 degrees and above, instead of 99.5 degrees and above). In response, CSC Sugar commenced an action challenging the 2017 CVD Amendment on procedural and substantive grounds. CSC Sugar demonstrated that Commerce failed to maintain a complete record including memoranda of ex parte meetings as required pursuant to 19 U.S.C. § 1677f(a)(3). The court issued two decisions ultimately vacating the 2017 CVD Amendment. See CSC Sugar v. United States, 42 CIT ___, 317 F. Supp. 3d 1322 (2018); CSC Sugar v. United

States, 43 CIT ___, 413 F. Supp. 3d 1310 (2019) ("CSC Sugar II"). The court assumes

familiarity with these decisions.

Thereafter, Commerce commenced a proceeding to consider and adopt a new

CVD amendment. See CVD Statutory Assessment Memo at 1–2, PD[4] 101 (describing

negotiation, notice and comment process, and signing of 2020 CVD Amendment). CSC

Sugar now challenges the 2020 CVD Amendment arguing (1) that Commerce did not

comply with recordkeeping requirements during the negotiation of the 2020 CVD

Amendment; (2) that the record does not support the need to both revise the polarity

standards for raw and refined sugar and incorporate a bulk shipment requirement; and

(3) that Commerce did not provide a complete analysis of the public interest requirement

under 19 U.S.C. § 1673c(a)(2)(B). See generally Pl.'s Br.

## II. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless

they are "unsupported by substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C § 1516a(b)(1)(B)(i). More specifically, when reviewing

agency determinations, findings or conclusions for substantial evidence, the court

assesses whether the agency action is reasonable given the record as a whole. Nippon

Steel Corp v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial

evidence has been described as "such relevant evidence as a reasonable mind might

---

[4] "PD ___" refers to a document contained in the public administrative record, which is
found in ECF No. 34-1, unless otherwise noted. "CD ___" refers to a document contained
in the confidential administrative record, which is found in ECF No. 34-2, unless otherwise
noted.

accept as adequate to support a conclusion." <u>DuPont Teijin Films USA v. United States</u>, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting a reasonableness review. 3 Charles H. Koch, Jr., <u>Administrative Law and Practice</u> § 9.24[1] (3d ed. 2020). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A <u>West's Fed. Forms</u>, National Courts § 3.6 (5th ed. 2020).

Separately, the two-step framework provided in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the countervailing duty statute. <u>See</u> <u>United States v. Eurodif S.A.</u>, 555 U.S. 305, 316 (2009) (An agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

### III. Discussion

CSC Sugar first argues that because the <u>2020 CVD Amendment</u> makes substantively the same changes to the <u>CVD Agreement</u> as the <u>2017 CVD Amendment</u>, Commerce's recordkeeping failure for the <u>2017 CVD Amendment</u> "is carried over to the

2020 record by reason of Commerce's implicit reliance on this tainted record." Pl.'s Br. at 12. To the contrary, Commerce expressly clarified that it would rely on "only" information placed on the record after October 18, 2019, the date of the court's decision vacating the 2017 CVD Amendment. See Period for Rebuttal Comments, PD 49 ("Commerce will only consider comments and factual information submitted to the official records of these proceedings after October 18, 2019.").

Accepting CSC Sugar's position that Commerce implicitly relied on information from the 2017 proceeding would require the court to conclude that Commerce acted in bad faith in conducting the 2020 proceeding. The law is clear that, absent "well-nigh irrefragable proof," government officials are presumed to act in good faith in discharging their duties. McEachern v. Office of Personnel Management, 776 F.2d 1539, 1544 (Fed. Cir. 1985). Yet CSC Sugar appears to contend that Commerce's procedural failure in the negotiations over the 2017 CVD Amendment can never be remedied, maintaining that "[e]ven if the details of those ex parte meetings were disclosed now, which Commerce admitted it cannot do as part of the prior litigation, that would not vindicate CSC Sugar's right to participate in the process while the process is ongoing." Pl.'s Br. at 13. The court does not agree and rejects CSC Sugar's argument that the procedural defects of the 2017 proceeding somehow carried over to the 2020 proceeding.

As for CSC Sugar's argument that Commerce improperly cloned the record of the 2017 proceeding for the 2020 proceeding, see Pl.'s Br. at 10–14, there is no dispute that the changes in the 2020 CVD Amendment are substantively the same as those in the 2017 CVD Amendment. Nevertheless, Defendant argues that "CSC is incorrect that the

records are substantively identical." Def.'s Resp. at 17. CSC Sugar ignores the crucial fact that it had the opportunity to develop the record of the 2020 proceeding through submission of comments, rebuttal comments, and factual information. See Comments on Suspension Agreement, PD 42; Rebuttal Comments, PD 58; Clarification of Rebuttal Comments, PD 66; Comments on Draft Amendments to Suspension Agreement, PD 85. This crucial fact undercuts Plaintiff's attempt to equate the 2020 proceeding with the 2017 proceeding. Cf. CSC Sugar II, 43 CIT at ___, 413 F. Supp. 3d at 1317 (explaining prejudice to CSC Sugar in the 2017 Amendment negotiations, noting "Commerce's complete failure to follow § 1677f effectively prevented CSC Sugar from commenting on the ex parte materials and discussions Commerce engaged in during the CVD Amendment negotiations.").

Although certain information in the record of the 2020 proceeding was also in the record for the 2017 proceeding, this fact alone does not demonstrate that the procedural irregularity the court found in the 2017 proceeding carries over to the 2020 proceeding. CSC Sugar argues that information originally placed on the record of the 2017 proceeding is tainted and therefore should not be placed in the record of the 2020 proceeding. See Pl.'s Br. at 13. CSC Sugar's argument is predicated on the view that this Court passed on the merits of the information contained in the record of the 2017 proceeding. Plaintiff is mistaken. The reason for the court's order vacating the 2017 CVD Amendment was Commerce's failure to memorialize ex parte meetings and no more. See CSC Sugar II, 43 CIT at ___, 413 F. Supp. 3d at 1318. Given Commerce's express commitment to consider solely information submitted after October 2019, see Period for Rebuttal

Comments, as well as the fact that CSC Sugar had ample opportunity to participate and comment on the new record, CSC Sugar has failed to demonstrate that "record supporting the 2020 Amendment is functionally the same as the record supporting the 2017 Amendment." See Pl.'s Br. at 10.

Aside from contending that the procedural defects of the 2017 proceeding should be imputed to the 2020 proceeding, Plaintiff maintains that the "2020 Amendment suffers from procedural irregularities related to timing, which also deprived CSC Sugar of important procedural benefits." Id. at 14–19. Specifically, CSC Sugar argues that Commerce rushed the 2020 proceeding, completing it in only six weeks, which left "simply no time (or willingness by Commerce) … to consider and address new information." Pl.'s Br. at 15. Plaintiff's contentions are not supported by the record. CSC Sugar does not argue that Commerce's swift completion of the 2020 proceeding violated any statutory or regulatory provisions. While Plaintiff contends that the proceeding did not provide adequate time for the submission and consideration of certain information, see Pl.'s Br. at 18, it did not press Commerce for additional time to cure any perceived procedural shortcomings or to submit additional information for the record, except for one instance. And, Commerce granted CSC Sugar's sole extension request. See Ext. for Comments on Amendments to Draft Suspension Agreements, PD 29. CSC Sugar has thus failed to demonstrate that it was deprived of any procedural safeguards regarding the information on the 2020 CVD Amendment record.

CSC Sugar also argues that "by statute and through practice, Commerce has a duty to publish appropriate notifications and to issue instructions to Customs that puts

into effect its published decisions." Pl.'s Br. at 16. CSC Sugar notes that "Commerce held off on issuing the instructions to vacate the 2017 Amendment by almost seven weeks. Yet, it took only three weeks for Commerce to issue instructions to implement the 2020 Amendment." Id. Problematically, Plaintiff does not cite any statutes, regulations, or practice that Commerce allegedly violated. Instead, CSC Sugar's contention appears to be that Commerce must have acted in bad faith by delaying its instructions to Customs in vacating the 2017 CVD Amendment.[5] Commerce's instructions for the termination of the 2017 CVD Amendment specifically state that "as of [December 7, 2019], the CVD Agreement . . . is in effect and applies to all contracts entered into after [December 7, 2019.]" See Termination of Customs Instructions, PD 114.

Therefore, the delay in issuing the instructions did not impact the dates of the contracts to which the original CVD Agreement applied. Similarly, Commerce's instructions for the 2020 CVD Amendment were informational and state that "[t]he 2020

---

[5] Plaintiff does cite to this Court's Order of December 6, 2019, in which the Court stated:

> This discrepancy in rationales indicates that the purpose of the stay is not to "permit an orderly transition to compliance with the Court's judgments," but instead to delay enforcement of the judgment until Commerce issues a "new" suspension agreement and tries to force Plaintiff to start an appeal anew. Without attempting to discern the "true" motivation for the stay of enforcement, it suffices to say that the difference in rationales asserted by the Defendant and the Defendant-Intervenors gives the court pause.

CSC Sugar II, 43 CIT at ___, 413 F. Supp. 3d at 1310 (Court No. 17-00214). Although the court did express concern about the "discrepancy" in rationales for delay asserted by Commerce and other interested parties, Plaintiff has not met its burden in demonstrating any factual support that Commerce's delay was actually the result of bad faith.

CVD Amendment applies to all contracts for Sugar from Mexico exported from Mexico on or after the signature date of the Amended CVD Agreement, <u>i.e.</u>, [January 15, 2020]." 2020 CVD Amendment Customs Instructions, PD 118. Thus, even pursuant to the Customs instructions, the original <u>CVD Agreement</u> applied to contracts for sugar from Mexico from the time of the termination of the <u>2017 CVD Amendment</u> to the signing of the <u>2020 CVD Amendment</u>. These facts make it difficult to accept CSC Sugar's hoped for inference that Commerce acted in bad faith in delaying its issuance of instructions to Customs.

Turning to the merits, CSC Sugar maintains that Commerce's adoption of the <u>2020 CVD Amendment</u> is unsupported by substantial evidence because "Commerce has provided <u>no</u> evidence to show why the 2020 Amendment's change in polarity standards are necessary <u>in addition to</u> the amendment's bulk-shipment requirement." Pl.'s Br. at 20. Plaintiff also argues that "the polarity standard adopted is contrary to law because Commerce must explain the 'connection between the facts found and the choice made.'" <u>Id.</u> (citing <u>Elec. Consumers Res. Council v. Fed. Energy Regulatory Comm'n</u>, 747 F.2d 1511, 1513 (D.C. Cir.1984)).

Plaintiff's argument that Commerce failed to provide a "reasoned explanation" for a change in the polarity threshold is misplaced. Commerce explained, throughout the negotiation of the <u>2020 CVD Amendment</u>, why the changes to the polarity thresholds for

Refined Sugar[6] and Other Sugar[7] coupled with the inclusion of the "bulk shipment"

provision[8] for Other Sugar work in concert to "eliminate completely" the injurious effects

of Mexican sugar imported into the United States. <u>See</u> 19 U.S.C. § 1673c(c); <u>see also</u>

CVD Statutory Assessment Memo, PD 101; Sugar Comments Memo, PD 102.

Specifically, during the negotiation of the <u>2020 CVD Amendment</u>, Commerce explained

that modifying the polarity thresholds and including a bulk-shipping provision would help

to address two critical issues: (1) diminished supply of raw sugar for United States cane

sugar refiners; and (2) decline in United States price of Refined Sugar caused by exports

of Mexican sugar into the United States. <u>See</u> CVD Statutory Assessment Memo at 5–8

(explaining that "These changes to the definitions of Refined and Other Sugar ensure to

the fullest extent possible, under the amended Agreements, the availability of supply of

input sugar for U.S. cane refiners."); Sugar Comments Memo at 5–8 ("The change in

polarity definition, which effectively establishes a price increase for sugar with a polarity

between 99.2 and 99.5, helps prevent price suppression or undercutting. The changes

---

[6] "Refined Sugar" is defined as sugar at a polarity of 99.2 and above, as produced and measured on a dry basis. <u>See</u> <u>2020 CVD Amendment</u>.

[7] "Other Sugar" is defined as sugar at a polarity of less than 99.2, as produced and measured on a dry basis. <u>See</u> <u>2020 CVD Amendment</u>.

[8] The "bulk shipment" provision specifies that "Other Sugar must be exported to the United States loaded in bulk and freely flowing (<u>i.e.</u>, not in a container, tote, bag or otherwise packaged) into the hold(s) of an ocean-going vessel." <u>See</u> <u>2020 CVD Amendment</u>. "To be considered as Other Sugar, if Sugar leaves the Mexican mill in a container, tote, bag or other package (<u>i.e.</u>, is not freely flowing), it must be emptied from the container, tote, bag or other package into the hold of the ocean-going vessel for exportation." <u>Id.</u> "All other exports of Sugar from Mexico that are not transported in bulk and freely flowing in the hold(s) of an ocean-going vessel will be considered to be Refined Sugar for purposes of the Export Limit or Additional U.S. Needs Sugar, regardless of the polarity of that Sugar." <u>Id.</u>

contained in the 2020 CVD Amendment support both objectives through quantitative restrictions that allow relatively more Other Sugar for U.S. refining operations and further restrict the amount of Refined Sugar (including sugar with a polarity between 99.2 and 99.5) in the U.S. market. … The potential harm to CSC is uncertain and limited, while the potential benefits to the domestic industry as a whole are substantial. For these reasons, we do not find CSC's arguments persuasive and we believe that the changes to the polarity definitions, and other provisions of the 2020 Amendments, are justified."). Accordingly, Commerce reasonably explained why the polarity modification was necessary along with the bulk-shipping provision.

With respect to CSC Sugar's substantial evidence challenge, to prevail on a substantial evidence challenge to Commerce's determination to include both the polarity threshold modification as well as the bulk-shipping requirement, CSC Sugar needed to demonstrate that the record supports one, and only one, reasonable outcome: that the bulk-shipping requirement "entirely eliminated" the injurious effect of the imported sugar and that the polarity threshold change was redundant and unnecessary. See Tianjin Wanhua Co. v. United States, 41 CIT ___, ___, 253 F. Supp. 3d 1318, 1328 (2017) (emphasizing that claimants challenging Commerce's determinations that choose among various options must demonstrate that their position is the "one and only reasonable" option on the record); Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("'[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" (quoting Consolidated Edison, Co. v. NLRB, 305 U.S. 197, 229

(1938))). Plaintiff does not explain how its preferred outcome is the one and only reasonable choice on the record. See Pl.'s Reply at 15 n.8. It just offers a conclusory assertion that the bulk shipment requirement rendered the polarity modification superfluous. Although CSC Sugar presented this argument to Commerce, other parties (including Defendant-Intervenors) also responded with their own arguments and information. See, e.g., ASC Rebuttal Comments at 10, PD 59, CD 13 (contending that "[w]ithout both provisions, the likelihood that such sugar bypasses refiners at the lower reference price increases"). Commerce directly addressed why it found both the bulk shipment provision and polarity modification necessary, explaining:

> In our statutory memoranda, we identified distinct problems with the functioning of the original agreements and explained how the changes contained in the 2020 Amendments address those problems. We noted that ASC alleged that U.S. cane refiners were receiving a diminished supply of sugar for their processing operations and that imports of Mexican sugar were undercutting U.S. sugar prices. Specifically, ASC alleged that Mexican "estandar" sugar was being sold for direct consumption at low prices, thus supplanting sales of refined sugar. The shipping requirements in the 2020 Amendments directly increase the likelihood that U.S. cane refiners will receive sufficient amounts of sugar for their operations, and all interested parties, including CSC, seem to agree on this point. The change in polarity definition, which effectively establishes a price increase for sugar with a polarity between 99.2 and 99.5, helps prevent price suppression or undercutting. The changes contained in the 2020 CVD Amendment support both objectives through quantitative restrictions that allow relatively more Other Sugar for U.S. refining operations and further restrict the amount of Refined Sugar (including sugar with a polarity between 99.2 and 99.5) in the U.S. market. We also explained that the change in polarity definition facilitates monitoring and verification. The changes contained in the 2020 Amendments work in concert with each other to ensure

> that, to the fullest extent possible, the 2020 Amendments
> meet the statutory requirement to "eliminate completely" the
> injurious effects of exports.

Sugar Comments Memo at 6; see also id. at 7 ("the changes to the polarity definition are intended to address market conditions caused by Mexican sugar imports and to eliminate completely the injury to the domestic industry caused by such imports. The changes are not intended to 'undercut the business model' of CSC."). Commerce thus explained its determination based on information in the record. Accordingly, the court sustains the 2020 CVD Amendment (including the polarity modification) as reasonable (and therefore supported by substantial evidence).

Lastly, CSC Sugar contends that "Commerce failed to adequately address the public interest as required by 19 U.S.C. § 1673c(a)(2)." See Pl.'s Br. at 23–25. The record does not support CSC Sugar's argument, as Commerce explained why the 2020 CVD Amendment is in the public interest based on its analysis of the criteria in 19 U.S.C. § 1673c(a)(2)(B). See CVD Statutory Assessment Memo at 8–11; Sugar Comments Memo at 9–11.

19 U.S.C. § 1673c(a)(2)(B) provides that in evaluating whether a quantitative restriction agreement (such as the one included in the 2020 CVD Amendment) is in the public interest, Commerce shall consider:

> (i)     whether, based upon the relative impact on consumer
>         prices and the availability of supplies of the
>         merchandise, the agreement would have a greater
>         adverse impact on United States consumers than the
>         imposition of antidumping duties;

(ii)    the relative impact on the international economic interests of the United States; and

(iii)     the relative impact on the competitiveness of the domestic industry producing the like merchandise, including any such impact on employment and investment in that industry.

19 U.S.C. § 1673c(a)(2)(B). CSC Sugar does not argue that the public interest is better served by terminating the suspension agreement and issuing a countervailing duty order. See Pl.'s Br. at 23–25; Pl.'s Reply at 17–20. Rather, it contends that the terms of the 2020 CVD Amendment (namely, the quantitative restriction agreement) are structured in a manner that precludes the 2020 CVD Amendment from being in the public interest, unlike the original CVD Agreement.

As to the first factor, Commerce noted that the 2020 CVD Amendment limits the supply of Mexican sugar and revises the export limit ratio of "Other Sugar" and "Refined Sugar," which helps (1) to counteract subsidies that incentivize Mexican overproduction, and (2) to support price stability for consumers in the United States. See CVD Statutory Assessment Memo at 9. Commerce found that "the impact of either the amended CVD Agreement or the imposition of countervailing duties would be to bring consumer prices for subject merchandise to fairly-traded market prices." Id. Consequently, Commerce determined that the 2020 CVD Amendment does not have a greater adverse impact on United States customers than the imposition of countervailing duties. Id.

With respect to the second criterion, the 2020 CVD Amendment helps to prevent unfairly traded imports of sugar while also promoting trade with Mexico, one of the United

States' closest trading partners. <u>See</u> CVD Statutory Assessment Memo at 10. In simultaneously eliminating injury to the United States industry caused by imports of Mexican sugar and promoting trading relationships, Commerce found that the <u>2020 CVD Amendment</u> promotes the international economic interests of the United States. <u>Id.</u>

CSC Sugar primarily challenges Commerce's analysis with respect to the third factor, which requires Commerce to assess "the relative impact on the competitiveness of the domestic industry producing the like merchandise." 19 U.S.C. § 1673c(a)(2)(B)(iii); <u>see</u> Pl.'s Br. at 25–26. Plaintiff argues that "although Commerce spills much ink across multiple memoranda under headings entitled 'public interest,' in substance those discussions are really about the domestic industry's interest—and making the largest companies in the domestic industry more profitable (although Commerce prefers to refer to this as being "more competitive")—to the exclusion of the general public's interest." <u>Id.</u> at 24. Plaintiff also maintains that "even with respect to <u>just</u> the domestic industry, Commerce still failed to address the full effect on the domestic industry, including CSC Sugar—and the 2020 Amendment's potential consequences to it." <u>Id.</u> at 25.

CSC Sugar argues that the statute requires Commerce to examine competition within the U.S. industry, as well as the public interest as a whole. During the proceeding, Commerce explained that "antidumping and countervailing duty laws are primarily concerned with the pricing behavior of foreign producers, the prices of foreign imports, and the impact of such imports on the U.S. domestic industry." <u>See</u> Sugar Comments Memo at 10. Accordingly, Commerce interpreted the phrase "competitiveness of the

domestic industry" to refer to the competitiveness of the domestic industry as a whole in relation to foreign imports and foreign producers of subject merchandise. Id.

Plaintiff contends that "Commerce has no special expertise or knowledge in determining what the term 'public interest' means as a matter of law." Pl.'s Br. at 23. However, Plaintiff does not challenge Commerce's interpretation of § 1673c(a)(2)(B) with any reference to the legal framework that the court uses to resolve challenges to Commerce's statutory interpretations (i.e., Chevron). See generally Pl.'s Br. To the extent that Plaintiff seeks to challenge Commerce's interpretation of § 1673c(a)(2)(B), the court deems this argument waived as Plaintiff has failed to make this argument with any reference to the proper legal framework. See Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1347 (Fed. Cir. 2016) (observing that Plaintiff failed to make its statutory interpretation "arguments within the operative Chevron framework. That misstep typically warrants a finding of waiver." (citing United States v. Great Am. Ins. Co., 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.")); see also Zhejiang Sanhua Co. v. United States, 39 CIT ___, ___, 61 F. Supp. 3d 1350, 1358 (2015) (citing Great American Insurance in holding that a party waived its arguments for failing to raise them within the operative Chevron framework); JBF RAK LLC v. United States, 38 CIT ___, ___, 991 F. Supp. 2d 1343, 1356 (2014) (same). Accordingly, the court will not address Plaintiff's arguments that Commerce failed to properly interpret § 1673c(a)(2)(B) in adopting the 2020 CVD Amendment, and instead address Plaintiff's argument that Commerce failed to reasonably apply the statute in adopting the 2020 CVD Amendment.

In applying the third factor to the instant record, Commerce found that the <u>2020 CVD Amendment</u> would have a positive impact on the competitiveness of the domestic industry, including CSC Sugar. <u>See</u> Sugar Comments Memo at 10–11. Specifically, the signatory producers/exporters of the <u>2020 CVD Amendment</u> have agreed to revise their prices of subject merchandise to "eliminate completely" the injurious effect of Mexican sugar imported into the United States. <u>Id.</u> Additionally, Commerce found that the amended definitions of "Refined Sugar" and "Other Sugar" ensure an adequate supply of input material is available to the United States industry for further processing, a crucial benefit that Commerce determined could not be guaranteed with a countervailing duty order. <u>See</u> CVD Statutory Assessment Memo at 9. As a result, Commerce found that the public interest as a whole was served. Accordingly, the court sustains Commerce's determination that the <u>2020 CVD Amendment</u> met the public interest criteria of § 1673c(a)(2)(B).

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the agency record is denied. Judgment will be entered accordingly.

/s/ Leo M. Gordon

Judge Leo M. Gordon

Dated:  June 25, 2020
           New York, New York